1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9    Servina Molina,                    )    No. CIV 05-0751-PHX-SMM
                                         )
10              Plaintiff,               )    **ORDER**
                                         )
11   v.                                  )
                                         )
12                                       )
     Phoenix Union High School District, )
13                                       )
                Defendant.               )
14                                       )
                                         )
15   _____)

16          Pending before the Court are Defendant Phoenix Union High School District's

17   ("Defendant") Motion for Summary Judgment (Dkt.28) and Plaintiff Servina Molina's

18   ("Plaintiff") Cross Motion for Partial Summary Judgment on Retaliation Claim. (Dkt. 33)

19                          **PROCEDURAL HISTORY**

20          Plaintiff commenced this Title VII action on March 10, 2005, alleging claims for

21   sexual harassment and retaliation. (Dkt. 1) On October 13, 2006, after completion of

22   discovery, Defendant filed a Motion for Summary Judgment. (Dkt.28)  Plaintiff responded

23   to Defendant's Motion for Summary Judgment and filed a Cross Motion for Partial Summary

24   Judgment on Retaliation Claim on November 16, 2006. (Dkt. 33)  In turn, Defendant filed

25   a Reply in Support of Motion for Summary Judgment and Response in Opposition to

26   Plaintiff's Motion for Partial Summary Judgment (Dkt. 39) as well as an Objection to

27   Plaintiff's Separate Statement of Facts (Dkt. 40).  Plaintiff has not filed a reply in support of

28   her Cross Motion for Partial Summary Judgment or a response to Defendant's Objection and

1   the time for filing such a reply or response has lapsed.  Therefore, the Court will address the

2   pending motions on the merits using the materials submitted by the parties.[1]

3                **OBJECTION TO PLAINTIFF'S SEPARATE STATEMENT OF FACTS**

4        Defendant requests that the Court accept their Statement of Facts in Support of Motion

5   for Summary Judgement ("Statement of Facts") as true because Plaintiff has not controverted

6   any of their facts. (Dkt. 30)  In addition, Defendant contends that Plaintiff "provided no

7   independent factual support for the statements she advances as 'facts.'" (Dkt. 40 at 1)

8        When, as here, a motion for summary judgment is made and supported as required

9   under Rule 56(c), "its opponent must do more than simply show that there is some

10  metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

11  *Radio Corp.*, 475 U.S. 574, 586 (1986).  The party opposing summary judgment must set

12  forth specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e).  In

13  addition, the Local Rules provide that a party opposing a motion for summary judgment

14  must:

15       [F]ile a statement, separate from that party's memorandum of law, setting forth: (1)
         for each paragraph of the moving party's separate statement of facts, a
16       correspondingly numbered paragraph indicating whether the party disputes the
         statement of fact set forth in that paragraph and a reference to the specific admissible
17       portion of the record supporting the party's position if the fact is disputed; and (2) any
         additional facts that establish a genuine issue of material fact or otherwise preclude
18       judgment in favor of the moving party.  Each additional fact shall be set forth in a
         separately numbered paragraph and shall refer to a specific admissible portion of the
19       record where the fact finds support.  Each numbered paragraph of the statement of
         facts set forth in the moving party's separate statement of facts shall, unless otherwise
20       ordered, be deemed admitted for purposes of the motion for summary judgment if not
         specifically controverted by a correspondingly numbered paragraph in the opposing
21       party's separate statement of facts.

22

23   ───────────────

24       [1]The parties have had the opportunity to submit evidence and briefing, and the Court would
     not find oral argument helpful in resolving this matter.  Accordingly, the Court finds the pending
25   motion for summary judgment suitable for decision without oral argument. See LRCiv 56.2; Local
     Rules of Civil Procedure ("LRCiv") of the United States District Court for the District of Arizona
26   7.2(f); *Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 728-29
     (9th Cir. 1991) ("When a party has an adequate opportunity to provide the trial court with evidence
27   and a memorandum of law, there is no prejudice" when oral arguments are not held on motions for
28   summary judgment.)

LRCiv 56.1(b) (emphasis added).  Here, Plaintiff's Controverting Statement of Facts and Statement of Facts in Support of Plaintiffs Response to Defendants Motion for Summary Judgment and Cross Motion for Partial Summary Judgment on Retaliation Claim ("Controverting Statement of Facts") do not comply with LRCiv 56.1(b).  Plaintiff did not provide correspondingly numbered paragraphs for each paragraph of Defendant's statement of facts.  Instead, Plaintiff provided a collection of notes, most of which were lacking any independent factual support; a few conclusory paragraphs that responded to Defendant's Statement of Facts; and, three exhibits.  Therefore, the Court deems each paragraph of Defendant's Statement of Facts (Dkt 30), except paragraph nine (9), admitted pursuant to LRCiv. 56.1(b).

Paragraph 9 of Plaintiff's Controverting Statement of Facts does comply with LRCiv. 56.1(b); however, it does not controvert paragraph 9 of Defendant's Statement of Facts and is, therefore, deemed admitted.  Defendant's paragraph 9 states, "[i]n order to diffuse the situation and to allow both Mr. Royer and Plaintiff to return to their positions and to focus on their job duties, the District transferred both employees to different high schools." (Dkt. 30) Plaintiff's response simply states, "Paragraph 2 and 9 of Defendant[']s Statement of Facts [are] false. Jeff Royer was not placed on Administrative leave."  Apart from the unsupported assertion that paragraph 9 is false, Plaintiff does not address Defendant's statement or provide any independent evidence to contradict Defendant's statement.  Moreover, the references Plaintiff cites do not address whether she and Royer were in fact transferred to different high schools.   Accordingly, the Court deems paragraph 9 of Defendant's Statement of Facts uncontroverted and, therefore, admitted for purposes of resolving the pending motion for summary judgment.

## FACTS

The following facts are undisputed.

Plaintiff, a former employee of Defendant, was employed as a security assistant at Cesar Chavez High School ("Chavez") and her supervisor was a male by the name of Jeff Royer ("Royer").  On April 8, 2002, three female security employees- Plaintiff, Barbara

1   Bennett, and Naomi Wilkerson– verbally accused Royer of sexual harassment and race and

2   gender discrimination.

3        Defendant's Employee Conduct/Discipline Handbook ("the Handbook") specifically

4   sets forth the procedure for making a sexual harassment complaint.  According to the

5   Handbook, for all complaints of sexual harassment, except when the designated contact

6   person is the party alleged to have committed the harassment, an employee is required to file

7   a written complaint containing all relevant information with the local administration.  Neither

8   Plaintiff nor Ms. Bennet or Ms. Wilkerson, ever filed a formal written sexual harassment

9   complaint.  At her deposition, Plaintiff admitted that she knew about the Defendant's sexual

10  harassment policy and procedure

11       In addition to the Handbook, Defendant regularly requires employees to complete

12  inservice training, which specifically includes training on sexual harassment.   Royer

13  completed Defendant's inservice training, on October 13, 2000, and August 10, 2001.

14       According to Plaintiff, Royer made only two sexually oriented comments to her, both

15  of which were uttered on November 1, 2001.  The sexually oriented comments were: (1)

16  comments to the effect that she and Naomi Wilkerson, another security assistant, should get

17  together in a sexual way, and (2) that she could pose for Royer naked on his desk.  Plaintiff

18  and Wilkerson stated in their depositions that these comments were made after Royer

19  witnessed Plaintiff showing Wilkerson a picture of herself in a two-piece bathing suit in the

20  security office.   Plaintiff also alleged that Royer committed various acts of disparate

21  treatment against the female security assistants; however, neither the pleadings nor the

22  Complaint state a claim for disparate treatment under Title VII.  Plaintiff has only alleged

23  claims for sexual harassment and retaliation.

24       The harassment accusation was not the only dispute involving Royer and Plaintiff at

25  this time.  At or about the same time the female security employees verbally accused Royer

26  of harassment and discrimination, Plaintiff was accusing Royer of dating a Chavez student.

27  Plaintiff approached Officer Adrian Giona ("Officer Giona"), Chavez's School Resource

28  Officer ("SRO"), and Jose Arenas, Chavez Athletic Director, to report that Royer was dating

1   a student.  According to Officer Giona, Plaintiff believed Royer had falsely accused her of

2   impersonating a police officer and she decided to report his sexual misconduct shortly

3   thereafter.

4         In light of the circumstances existing between Plaintiff and Royer, Defendant

5   determined that it was in their best interest to place both he and Plaintiff on paid

6   administrative leave pending the outcome of an external investigation.  The placement of an

7   employee on administrative leave with pay for the duration of an investigation was standard

8   practice for Defendant and was used regularly to ensure that  investigations were completed

9   in a timely and unbiased fashion.  Nancy Oyen ("Oyen"), Executive Director for Employee

10   Relations/Legal Services, appointed Dr. Phil Berra ("Dr. Berra") as the external investigative

11   officer to investigate all of the allegations against Mr. Royer.  Dr. Berra investigated the

12   allegations against Royer, and ultimately found that he acted inappropriately towards female

13   security assistants.

14         Based on the investigative results set forth in Dr. Berra's report, Defendant issued

15   Royer a written reprimand on May 14, 2002.  In order to diffuse the situation and to allow

16   both Royer and Plaintiff to return to their positions and to focus on their job duties,

17   Defendant transferred both employees to different high schools.  Both Plaintiff and Mr.

18   Royer retained the same job positions, respectively, same pay, and were transferred to

19   high schools within the southern portion of the District in the vicinity of Cesar Chavez

20   High School.

21         Plaintiff has expressly stated that her Title VII claims relate only to Defendant's

22   decision to place her on administrative leave, not their decision to transfer her to another

23   high school.

24                   **STANDARD OF REVIEW**

25         A court must grant summary judgment if the pleadings and supporting documents,

26   viewed in the light most favorable to the nonmoving party, "show that there is no genuine

27   issue as to any material fact and that the moving party is entitled to judgment as a matter

28   of law."  FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986);

*Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Jesinger*, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Jesinger*, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." *Id.* at 324. However, the nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see Matsushita*, 475 U.S. at 585-88; *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir. 1995).

**DISCUSSION**

**I. SEXUAL HARASSMENT**

Title VII provides that an employer may not "discriminate against an individual with respect to [her] compensation, terms, conditions, or privileges of employment because of [her] ...sex[.]" 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has made clear that sexual harassment constitutes unlawful discrimination under Title VII. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66 (1986).; *see Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1065 (9th Cir. 2002) (en banc) (citing *Meritor*). There are two types of sexual

harassment recognized by the courts.  The first, referred to as "quid pro quo" harassment, is characterized by a loss (either actual or threatened) of tangible economic benefits to the employee who rejects the employer's sexual demands. *See Heyne v. Caruso*, 69 F.3d 1475, 1478 (9th Cir. 1995).  The second, referred to as "hostile environment" harassment, occurs when there exists an offensive or intimidating work environment for employees of one particular gender.  *See Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995).

**A. Quid Pro Quo Harassment**

Defendant seeks summary judgment on Plaintiff's sexual harassment claims, arguing that there is no evidence showing that Royer made quid pro quo threats to her or that her job was affected by Royer's alleged comments.  To establish a prima facie case of quid pro quo sexual harassment, plaintiff must show that an individual explicitly or implicitly conditioned a job, a job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct. *Heyne*, 69 F.3d. at 1478.  Here, Plaintiff has not pled a claim for quid pro quo sexual harassment and has not advanced any arguments or presented any evidence to support such a claim.  Notably absent from Plaintiff's filings is any claim that her job, a job benefit, or the absence of a job detriment, was conditioned upon the acceptance of sexual conduct.  Rather, Plaintiff's allegations concern disparate treatment of female employees and offensive comments.  Based on Plaintiff's Complaint and her summary judgment briefs, the Court finds that her sexual harassment claim is for hostile environment based on sex.

**B. Hostile Work Environment**

To establish a claim for hostile environment based on sex, plaintiff must prove that she was subjected to verbal or physical conduct, that the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive work environment. *See Rene*, 305 F.3d at 1065 (citing *Ellison v. Brady*, 924 F.2d 872, 875-76 (9th Cir. 1991)).  The work environment must be both objectively and subjectively offensive, one that a reasonable [female] would find hostile or abusive, and one that the [plaintiff] in fact did perceive to be so. *Faragher*

1   *v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 21-22); see

2   *Ellison*, 924 F.2d at 878-80 (adopting a "reasonable victim" standard).  The plaintiff must

3   also prove that "any harassment took place 'because of sex.'" *Nichols v. Azteca Rest.*

4   *Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (citing *Oncale v. Sundowner Offshore*

5   *Servs., Inc.*, 523 U.S. 75, 78 (1998)); *see* 42 U.S.C. § 2000e-2(a)(1).

6   i. Objectively Hostile Environment

7        Courts look at the totality of circumstances to determine whether conduct was

8   sufficiently severe or pervasive to violate Title VII. *Meritor*, 477 U.S. at 69.

9   Occasionally annoying or merely offensive comments do not constitute sexual

10  harassment; however "[s]exual or gender-based conduct which is abusive, humiliating, or

11  threatening violates Title VII ... ." *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463

12  (9th Cir. 1994).  "It is enough ... if such hostile conduct pollutes the victim's workplace,

13  making it more difficult for her to do the job, to take pride in her work, and to desire to

14  stay on in her position." *Id*.

15       The evidence in this case, construed in Plaintiff's favor, shows the following. On

16  April 8, 2002, three female security employees accused Royer, their supervisor, of sexual

17  harassment and gender discrimination.  At the request of Oyen, Defendant's Executive

18  Director for Employee Relations/Legal Services, Dr. Berra was appointed to conduct an

19  external investigation into the allegations against Royer.  Dr. Berra investigated the

20  allegations and found that Royer violated Defendant's polices regarding sexual

21  harassment and standards of employee conduct.  Specifically, Dr. Berra found that Royer

22  "engaged in verbal interchanges of a sexual nature with specific female members." (*Id*.)

23       The 'verbal interchanges' relevant to this matter arise from comments Royer made

24  on September 5, 2001 and on November 1, 2001.  On September 5, 2001, after learning

25  that some of the female security employees had complained to Dr. McElroy about his

26  behavior, Royer said, "I don't know what kind of problem you girls are having with the

27  way things are run around here but nothing is going to change no matter what you guys

28  say." (Dkt. 30, Ex. K 120:9-24).  This statement was uttered over the radio used by the

security employees to communicate with each other.  The second incident occurred on November 1, 2001, after Royer witnessed Plaintiff showing Wilkerson a picture of herself in a two-piece bathing suit.  After seeing the picture, Royer said, "Hey, 7. I'm ready now. I brought my camera. You can pose for me naked on my desk." (Dkt. 29, Ex. K 123:14-16)  Later that same day, Royer said to Plaintiff, "Hey 7.  Now you and Naomi will be all alone. Now you guys can get together.  I would like to see the both of you together."  (*Id.*, Ex. K 127:17-24) No other sexually offensive statements were attributed to Royer.  Based on the results of Dr. Berra's investigation, Defendant issued a written reprimand to Royer on May 14, 2002, and transferred both Royer and Plaintiff to different high schools.

Defendant argues that Plaintiff's hostile work environment claim should be dismissed because her allegations, if assumed to be true, do not constitute the type of "severe or pervasive" harassment required to establish a claim under Title VII.  The Court agrees.

 Looking at all of the circumstances from the perspective of a reasonable person in Plaintiff's position, the Court finds that Royer's conduct was not of a severity or frequency to create an objectively hostile working environment.  Royer's comments, while offensive, were not abusive, humiliating or threatening.  The fact that the comments were uttered immediately after Royer saw a picture of Plaintiff in a bathing suit indicate that this was teasing, albeit offensive, inappropriate teasing.  Moreover, only two sexual comments were made to Plaintiff and both occurred on the same day – the day Royer saw her showing the picture to Wilkerson.  Finally, Royer's reference to the female security employees as "girls" was arrogant and chauvinistic; however, there is no evidence that he habitually spoke to the female employees in this way.  As the Supreme Court has previously recognized, "[s]imple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (internal quotation marks and citations omitted).  Construing the evidence in Plaintiff's favor, there is no doubt that

1    Royer made inappropriate, offensive comments to Plaintiff.  However, these comments

2    were isolated and not severe enough to render Plaintiff's workplace objectively hostile.[2]

3    ii. The Faragher/Ellerth Defense

4        Assuming, *arguendo*, that Plaintiff had established a prima facie case of hostile

5    work environment sexual harassment, the Court finds that summary judgment on the

6    claim is nonetheless warranted because Defendant has demonstrated both parts of the

7    affirmative defense known as the *Faragher/Ellerth* defense.

8        Generally, an employer is vicariously liable for a hostile environment created by a

9    supervisor. *Faragher*, 524 U.S. at 780.  However, when no "tangible employment action"

10   has been taken, an employer may raise an "affirmative defense to liability or damages,

11   subject to proof by a preponderance of the evidence." *Ellerth*, 524 U.S. at 765.  The

12   *Faragher/Ellerth* defense requires the employer to show: (1) that it exercised reasonable

13   care to prevent and correct promptly any sexually harassing behavior, and (2) that the

14   employee unreasonably failed to take advantage of preventive or corrective opportunities

15   provided by the employer. *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 955 (9th Cir.

16   1999).

17       Here, the record unequivocally demonstrates that Defendant exercised reasonable

18   care both to prevent and correct sexual harassment.  Defendant promulgated an anti-

19   harassment policy, which is contained in the Handbook.  The Handbook defines harassing

20   conduct and provides a specific reporting procedure.  In addition, Royer completed

21   Defendant's inservice training , which specifically included training on sexual harassment,

22   at least twice before the alleged harassment occurred.[3]  Plaintiff acknowledged receiving

23

24       [2]Defendant does not address whether Plaintiff established the second and third elements of
25   the hostile environment sexual harassment claim: (1) whether the harassment was 'unwelcome' and
     (2) whether it occurred 'because of sex.' *Nichols*, 256 F.3d at 871-872.  Having found that there was
26   no triable issue as to the first element of the claim (that the workplace was not objectively hostile
     environment), the Court will also refrain from discussing the second and third elements of the claim.

27

28       [3]Royer completed Defendant's inservice training on October 13, 2000 and August 10, 2001.

1   the Handbook, reading the portions regarding Defendant's harassment policy and

2   understanding the procedure for reporting sexual harassment.  Precautions similar to the

3   ones employed by Defendant have been recognized by the Ninth Circuit as satisfying the

4   employer's burden under the first prong of the *Faragher/Ellerth* defense to show that it

5   exercised reasonable preventive care. *See, e.g., Holly D. v. Cal. Inst. Tech.*, 339 F.3d

6   1158, 1177-78 (9th Cir. 2003).

7        Defendant has also provided evidence to show that it took reasonable remedial

8   measures upon learning of Royer's inappropriate conduct toward female employees.  The

9   day after the security employees accused Royer of race and gender discrimination,

10  Defendant placed him on administrative leave.  Defendant appointed an external

11  investigator, Dr. Berra, to investigate the allegations against Royer.  After a detailed

12  investigation, Dr. Berra concluded "that Royer's treatment of females in the workplace

13  was at times less than professional," that Royer used sexually derogatory language, and

14  that Royer's "macho" attitude led him to the disparate treatment of males and females in

15  the workplace. (Dkt. 28, Ex. D at 10) Based on the results of Dr. Berra's investigation,

16  Defendant formally reprimanded Royer, provided Royer with additional training on their

17  sexual harassment policy and transferred him to another school within Phoenix Union

18  High School District.

19        Plaintiff has provided no evidence that explains why she did not follow the

20  reporting procedures set forth in the Handbook.  According to the Handbook, Plaintiff

21  was required to file a complaint containing all relevant information with the local

22  administration. Plaintiff admitted to being aware of the policies and procedure set forth in

23  the Handbook; however, the Court finds that she did not file a formal written sexual

24  harassment complaint against Royer.  While Plaintiff asserted that she filed written

25  complaint regarding the sexual harassment in her Controverting Statement of Facts, there

26  is no evidence to support this assertion.  Morever, in light of Plaintiff's failure to adhere to

27  the Local Rules governing motions for summary judgment, Defendant's statement that she

28  did not file a written grievance, which was supported by the affidavit of Oyen, was

1  deemed admitted pursuant to LRCiv 56.1(b). Thus, the undisputed facts demonstrate that

2  Plaintiff did not file a formal complaint regarding harassment against Royer. Having

3  failed to provide any evidence that she utilized the available preventive or corrective

4  opportunities, the Court finds that Defendant established the both prongs of the

5  *Faragher/Ellerth* defense.

6        Plaintiff produced no evidence capable of rebutting Defendant's *Faragher/Ellerth*

7  defense. Rather, Plaintiff argues that Defendant may not assert the *Faragher/Ellerth*

8  defense because she suffered a tangible employment action– namely, the administrative

9  leave. A tangible employment action is defined as a "significant change in employment

10  status, such as hiring, firing, failing to promote, reassignment with significantly different

11  responsibilities." *Ellerth*, 524 U.S. 761. The allegations involving Plaintiff were not

12  confined to the sexual harassment issue; around the same time the female security

13  employees accused Royer of sexual harassment, Plaintiff accused Royer of dating a

14  student at Chavez and attempted to have the Officer Giona, the SRO, charge him with

15  dating a student. Defendant's decision to place Plaintiff on administrative leave was part

16  of their standard practice and was used regularly to ensure investigations were objective

17  and timely. Moreover, Plaintiff admits that she received full pay while she was on leave

18  and she retained the same position and responsibilities upon her return to work. Because

19  Plaintiff did not experience a tangible employment action, the Court finds that the

20  *Faragher/Ellerth* defense does apply to her claim.

21        Although at trial the burden of proving the *Faragher/Ellerth* defense would rest on

22  Defendant, Plaintiff needed to produce evidence capable of rebutting it to survive

23  summary judgment. Plaintiff has not done so and the Court finds that Defendant is

24  entitled to summary judgment on Plaintiff's sexual harassment claim.

25  **II. RETALIATION**

26        Title VII "prohibits retaliation against an employee 'because [she] has opposed any

27  practice made an unlawful employment practice'" by Title VII. *Nelson v. Pima Cmty.*

28  *College*, 83 F.3d 1075, 1082 (9th cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)). A plaintiff

1    makes a prima facie case of unlawful retaliation by producing evidence that she engaged
2    in activity protected by Title VII, that the employer subjected her to a materially adverse
3    action, and that there was a causal link between the protected activity and the adverse
4    action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  The Ninth Circuit has
5    explained that "the requisite degree of proof necessary to establish a prima facie case for
6    Title VII on summary judgment is minimal and does not even need to rise to the level of a
7    preponderance of the evidence." *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054,
8    1061-62 (2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

9        Defendant moved for summary judgment on Plaintiff's retaliation claim, arguing
10   that no materially adverse action was taken against Plaintiff.  In turn, Plaintiff moved for
11   partial summary judgment as to liability on the retaliation claim and argued that
12   Defendant's decision to place her on administrative leave constituted an adverse action for
13   retaliation purposes.[4]  According to Plaintiff, she was placed on leave after filing a
14   complaint with the SRO, which was also the same day other female security employees
15   filed a sexual harassment complaint against Royer.  Plaintiff claims that Defendant's
16   actions "had a chilling effect on those sexually harassed and were designed to prevent
17   them from raising such claims in the future." (Dkt 33 at 17)  Defendant does not dispute
18   these facts, but disputes Plaintiff's claim that their actions had a chilling effect on victims
19   of harassment.  Defendant produced evidence demonstrating that the placement of an
20   employee on paid administrative leave for the duration of an investigation was a standard
21   practice "used regularly to ensure that District investigations were completed in a timely
22   and unbiased fashion."  This fact was not controverted by Plaintiff.

23       A materially adverse action is an act that is likely to deter a reasonable employee
24   from making or supporting a claim of discrimination. *Burlington Northern & Santa Fe
25   Ry. v. White*, 126 S.Ct. 2405, 2415 (2006).  As the Supreme Court has said, "[c]ontext

26

27       [4]Plaintiff asserts that the retaliation occurred prior to her transfer to South Mountain High
     School. (Dkt. 33 at 17) Therefore, the Court's analysis of her retaliation claim will be confined to
28   her placement on administrative leave.

1    matters" when analyzing the significance of a given act of retaliation. *Id*.  The evidence in

2    this case, construed in Plaintiff's favor, does not create a triable issue as to whether

3    Defendant's placement of Plaintiff on paid administrative leave constituted a materially

4    adverse action.  At the time Plaintiff was placed on leave, her relationship with Royer had

5    taken an antagonistic turn and the situation between the two was becoming

6    unmanageable.  For example, approximately a week before Plaintiff was placed on leave,

7    Royer was accused of dating a Chavez student.  The source of the allegation informed Dr.

8    McElroy that she received the information from Plaintiff's daughter.  The day before

9    Plaintiff was placed on leave, three Chavez female security employees accused Royer of

10   race and gender discrimination.  That same day, the Chavez Athletic Director informed

11   Dr. McElroy that Plaintiff had made serious accusations about Royer's professional and

12   personal life.  On the day Plaintiff and Royer were placed on leave, Officer Giona

13   informed Dr. McElroy that Plaintiff had asked her to charge Royer with dating a Chavez

14   student.  According Officer Giona, Plaintiff believed Royer had accused her of

15   impersonating a police officer and informed her that she had evidence of sexual

16   misconduct by Royer with a student.  Given the severity of the allegations, Defendant

17   appointed an outside investigator to investigate whether Royer had dated a student and

18   whether he had engaged in race and gender discrimination.  Defendant also determined

19   that it was in their best interest to place both Plaintiff and Royer on paid administrative

20   leave pending the outcome of the investigation.  In light of the turbulent situation at

21   Chavez, the Court finds that Defendant's placement of Plaintiff on paid administrative

22   leave was not a materially adverse action.  Plaintiff and Royer were involved in an

23   acrimonious dispute that was becoming increasingly antagonistic.  Moreover, while

24   Plaintiff was the only female security assistant placed on administrative leave during the

25   external investigation, she was not the only female security assistant that complained of

26   sexual discrimination.  Given these circumstances, the Court finds that Defendant's

27   decision to place Plaintiff on paid administrative leave would not deter a reasonable

28   employee from making or supporting a claim of discrimination.  Therefore, the Court will

dismiss Plaintiff's retaliation claim because the evidence, construed in her favor, fails to establish that she was subjected to a material adverse action.

## CONCLUSION

Accordingly, in light of the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment. (Dkt.28) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Cross Motion for Partial Summary Judgment on Retaliation Claim (Dkt. 33) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

DATED this 14th day of May, 2007.

Stephen M. McNamee
United States District Judge